IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| ANDREW PAUL MANARD, individually, and on behalf of himself and all others similarly situated, | * * * | |
| Plaintiff, | * | CASE NO. 4:10-CV-15 (CDL) |
| vs. | * * | |
| KNOLOGY, INC., a Delaware Corporation, | * | |
| Defendant. | * | |

O R D E R

In this putative class action, Plaintiff Andrew Paul Manard alleges that Defendant Knology, Inc. diverted substantially all of the Internet communications of approximately 20,000 of its customers, without their consent, to an advertising company, which then reviewed the intercepted information and profiled Defendant's affected customers. Plaintiff, individually and on behalf of a class of similarly situated individuals, brings claims against Defendant for violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* He also asserts state law claims for invasion of privacy, unjust enrichment, and trespass.

Defendant contends that Plaintiff's claims are subject to binding arbitration pursuant to the Federal Arbitration Act,

9 U.S.C. § 1 *et seq.*, and filed a Motion to Compel Arbitration and Stay Proceedings (Doc. 15). For the following reasons, Defendant's motion is granted.

## FACTUAL BACKGROUND

Defendant is an Internet service provider for residential and commercial customers. Plaintiff is the account holder for Precision Chiropractic, which entered into a business services agreement with Defendant on February 19, 2008 (the "BSA"). (*See generally* Ex. A to Def.'s Mot. to Compel Arbitration & Stay Proceedings [hereinafter Def.'s Mot.], Business Services Agreement, Feb. 19, 2008.) By signing the BSA, Plaintiff and Precision Chiropractic "acknowledge[d] notice of, accept[ed] and agree[d] to the **Knology Customer Service Agreement**, **Acceptable Use Policy**, and **Cable Television Privacy Rights Notice**, copies of which [were] posted at www.knology.com, and policies and regulations which may be referenced therein, all of which [were] incorporated herein by reference and made a part hereof." (*Id.* at 2.)

The Knology Customer Service Agreement ("CSA") in effect at the time Plaintiff signed the BSA with Defendant contained an arbitration provision that provided in part:

> **IT IS IMPORTANT THAT YOU READ THIS SECTION CAREFULLY. IT PROVIDES FOR RESOLUTION OF DISPUTES (WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION OR ANY OTHER LEGAL OR EQUITABLE THEORY), THROUGH FINAL AND BINDING ARBITRATION BEFORE A SINGLE NEUTRAL ARBITRATOR INSTEAD OF**

> **IN A COURT BY A JUDGE OR JURY OR THROUGH A CLASS ACTION.** ALL DISPUTES ARISING OUT OF OR RELATING TO THIS AGREEMENT (OTHER THAN ACTIONS FOR THE COLLECTION OF DEBTS YOU OWE US), INCLUDING, WITHOUT LIMITATION, ANY DISPUTE BASED ON ANY SERVICE OR ADVERTISING OF THE SERVICE RELATED THERETO, SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION, WHICH SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT ("FAA"), 9 U.S.C. §[§] 1-16.  ANY QUESTION REGARDING WHETHER A PARTICULAR CONTROVERSY, OR THE PROCEDURES THEREIN, IS SUBJECT TO ARBITRATION SHALL BE DECIDED BY THE ARBITRATOR. YOU HAVE THE RIGHT TO BE REPRESENTED BY COUNSEL IN THE ARBITRATION.

(Ex. B to Def.'s Mot., Knology Customer Service Agreement 14, Dec. 12, 2007.)  Plaintiff acknowledges that he signed the BSA and that the BSA "incorporate[d] by reference Knology's Customer Service Agreement." (Pl.'s Mem. in Supp. of Pl.'s Opp'n to Def.'s Mot. to Compel Arbitration & Stay Proceedings 4-5 [hereinafter Pl.'s Opp'n].) Plaintiff, however, argues that the arbitration provision is not binding on him because Defendant did not physically provide him with the CSA at the time he entered into the BSA.  (*Id.* at 5.)

                                DISCUSSION

**I.   The Federal Arbitration Act**

The Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate disputes arising out of a transaction involving interstate commerce is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Under the FAA,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to

>arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

A strong federal policy exists in favor of arbitration, and "[a]bsent some violation of public policy, a federal court must refer to arbitration any controversies covered by the provisions of an arbitration clause." *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1311 (11th Cir. 2005) (per curiam) (internal quotation marks omitted). The Court may not, however, compel parties to arbitrate a dispute if they have not agreed to do so. *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). Although the validity of an arbitration agreement is generally governed by the FAA, the issue of whether an enforceable agreement to arbitrate exists is typically determined by state law contract principles. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367-68 (11th Cir. 2005). "Thus, in determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs

the formation of contracts[,]" along with the strong federal policy favoring arbitration. *Id.* at 1368.

In this case, Plaintiff contends that Defendant's motion to compel arbitration and to stay proceedings should be denied because (1) Defendant failed to provide evidence that the parties agreed to arbitrate; (2) the arbitration provision is too broad and therefore unenforceable under Georgia law; and (3) Defendant waived its right to arbitrate the disputes in this action.[1]  (Pl.'s Opp'n 2.)  The Court will address each contention in turn.

## II. The Existence of a Valid Agreement to Arbitrate

Initially, Plaintiff contends that he did not assent to an agreement to arbitrate. (Pl.'s Opp'n 4-6.)  Whether the parties have a valid arbitration agreement must be decided by the Court. *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992).  In making that determination, the Court applies Georgia law.  *Caley*, 428 F.3d at 1368.  (Knology Customer Service Agreement 16 (stating CSA is "governed by and construed in accordance with the laws of the State of Georgia").)

Here, Plaintiff signed the contract with Defendant that clearly and unambiguously incorporated the arbitration provision.  That arbitration provision was readily available for Plaintiff's review if

---

[1] Plaintiff does not appear to argue that his claims are not covered under the arbitration provision, and the Court is satisfied that they are.

5

he had bothered to read it.  (*See* Ex. B to Def.'s Reply in Supp. of Mot. to Arbitrate, Hemker Decl. ¶¶ 3-4, June 1, 2010 (noting that the CSA was available on Defendant's website for Plaintiff's review on the date Plaintiff executed the BSA).)  Under Georgia law, "incorporation by reference is generally effective to accomplish its intended purpose where . . . the provision to which reference is made has a reasonably clear and ascertainable meaning."  *Binswanger Glass Co. v. Beers Constr. Co.*, 141 Ga. App. 715, 717, 234 S.E.2d 363, 365 (1977); *accord J.S. & H. Constr. Co. v. Richmond County Hosp. Auth.*, 473 F.2d 212, 215 (5th Cir. 1973);[2] *see World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1245 (11th Cir. 2008) ("It is clear . . . that an arbitration clause can be incorporated even if the relevant incorporation language does not specifically refer to it."); *c.f. Rushing v. Gold Kist, Inc.*, 256 Ga. App. 115, 118-19, 567 S.E.2d 384, 387-88 (2002) (finding that arbitration provision in agricultural cooperative's by-laws was enforceable against member even though member only signed membership agreement and not by-laws, because membership agreement expressly provided that his membership was subject to by-laws and member "expressly consented to be bound by the [b]y-[l]aws" when he executed

---

[2]In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981.

membership agreement).  By signing the BSA, which incorporated by reference the arbitration provision in the CSA, Plaintiff agreed to arbitrate the dispute in this case.

**III. Enforcement Under the FAA**

Next, Plaintiff contends that even if he entered into a valid agreement to arbitrate, the arbitration provision is too broad and is, therefore, unenforceable under Georgia law.  (Pl.'s Opp'n 6-9.) Plaintiff argues that the transactions between Plaintiff and Defendant did not "involve[] interstate commerce in any way." (*Id.* at 8.)  The Court rejects this contention.  It is clear that the transactions in this case—provision of telecommunications services, including telephone and internet—involve interstate commerce.  *See United States v. Faris*, 583 F.3d 756, 759 (11th Cir. 2009) (per curiam) ("The internet is an instrumentality of interstate commerce." (internal quotation marks omitted)); *United States v. Evans*, 476 F.3d 1176, 1180 (11th Cir. 2007) ("Telephones and cellular telephones are instrumentalities of interstate commerce.").  Therefore, the FAA governs the agreement in this case.  Furthermore, the FAA "preempts state law to the extent it treats arbitration agreements differently than other contracts." *Caley*, 428 F.3d at 1367.  Under the FAA, arbitration agreements, however broad in the types of disputes they cover, are enforceable.  *See, e.g., Blinco,* 400 F.3d at 1311. (*See also* Pl.'s Opp'n 8 (acknowledging that broad arbitration provisions

such as the agreement in this case are valid under federal cases interpreting the FAA).) Therefore, the Court finds that the arbitration provision in this case is enforceable under the FAA.

## IV. Lack of Waiver

Finally, Plaintiff contends that Defendant "has taken actions inconsistent with any such [arbitration] agreement," and that "[i]n so doing, Kn[o]logy waived its right to arbitrate this dispute." (Pl.'s Opp'n 9.) Specifically, Plaintiff argues that Defendant's decisions to file a motion to dismiss, negotiate a scheduling order, and participate in a mediation were actions "plainly inconsistent with Knology's perceived right to arbitrate this matter." (*Id.* at 10.)

"[D]espite the strong policy in favor of arbitration, a party may, by its conduct, waive its right to arbitration." *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (citation omitted). In determining whether Defendant has waived its right to arbitrate, the Court looks to two factors: "First, [the Court] decide[s] if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right, and, second, [the Court] look[s] to see whether, by doing so, that party has in some way prejudiced the other party." *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315-16 (11th Cir. 2002) (internal quotation marks omitted); *see S & H Contractors,*

8

*Inc.*, 906 F.2d at 1514 ("[A] party that [s]ubstantially invok[es] the litigation machinery prior to demanding arbitration may waive its right to arbitrate." (second & third alterations in original) (internal quotation marks omitted)). "When determining whether the other party has been prejudiced, [the Court] may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process." *S & H Contractors, Inc.*, 906 F.2d at 1514.

Defendant's actions in this case were neither inconsistent with its right to arbitrate, nor prejudicial to Plaintiff. Although Defendant previously filed a motion to dismiss, that action alone does not require a finding that it waived its right to insist upon arbitration. *See generally Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457 (2d Cir. 1985) (holding defendant did not waive right to arbitrate by filing motion to dismiss); *see also Se. Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC*, No. 7:07-cv-077 (HL), 2008 WL 2967230, at *4-*5 (M.D. Ga. July 30, 2008) (same). Defendant's participation in mediation is likewise not inconsistent with pursuing its right to have the matter arbitrated if it could not be resolved by agreement. Finally, Plaintiff has not suffered prejudice by Defendant's limited litigation of this case. Plaintiff filed his Class Action Complaint with this Court on February 2, 2010, and the parties began settlement discussions. The

9

mediation occurred on April 15, 2010, and only when the meditation yielded unsuccessful results did Defendant file its motion to compel arbitration. For all of these reasons, the Court finds that Defendant did not waive its right to arbitrate.

Since Plaintiff and Defendant entered into a valid, enforceable agreement to arbitrate the disputes in this action, and Defendant did not waive its right to arbitration, Defendant's motion to compel arbitration is granted. This action is stayed until the parties arbitrate the disputes in this action.[3] 9 U.S.C. § 3.

## CONCLUSION

As discussed above, Defendant Knology, Inc.'s Motion to Compel Arbitration and Stay Proceedings (Doc. 15) is granted, and this action is stayed pending resolution of the arbitration.[4]

---

[3]Although not raised by Plaintiff, the Court notes that the arbitration agreement is ambiguous as to whether class arbitration is permitted. (*See* Knology Customer Service Agreement 15 ("DISPUTES UNDER TH[E] [CSA] MAY NOT BE JOINED WITH ANOTHER PROCEEDING, INCLUDING ANY INDIVIDUAL OR CLASS LAWSUIT.").) The arbitrator must decide as a matter of contract interpretation under Georgia law whether class arbitration is permitted by the arbitration agreement. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452-53 (2003) (plurality opinion).

[4]Defendant's Motion to Dismiss (Doc. 9) is moot given the Court's Order to arbitrate this action.

IT IS SO ORDERED, this 18th day of June, 2010.

                                            S/Clay D. Land
                                                CLAY D. LAND
                                   UNITED STATES DISTRICT JUDGE